In the Matter of EDWARD STEVENSON, Respondent, *v.* JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., and LOUIS NINE, Appellant.

First Department, September 15, 1970.

122

*Benjamin Gassman* for appellant.

*Mary Johnson Lowe* of counsel (*Lowe & Levine* attorneys), for respondent.

*Per Curiam.* On June 23, 1970, a State-wide primary election was held. In the 78th Assembly District, 5,507 voters participated, but of that number only 1,859 participated in the selection of a nominee for the office of Assemblyman.

The breakdown of the official tally for the Assembly vote was: Edward Stevenson, 642; Louis Nine, 715; and Albert Brooks, Jr., 502. Thus, the loser and present petitioner lost by 73 votes. Thereafter, he, Stevenson, brought on a motion pursuant to section 330 of the Election Law, seeking a new primary election. The court appointed a Special Referee, and on July 10, 1970 and July 20, 1970, hearings progressed. On this latter date, both sides rested, and presumably, the matter became *sub judice.* On July 29, 1970, in response to an oral ex parte application on the part of the petitioner, the court directed the Referee to reopen the hearings.

The Referee, in his report of August 18, 1970, found irregularities sufficient to warrant ordering a new election, although he also found: "There is no claim that the irregularities were deliberate. The only question here raised is whether they are sufficient in number to affect this election and this must be resolved by looking to the probabilities of the instant Primary." Unfortunately, no further rationale is furnished; only the conclusion. The Referee found 263 irregularities. One hundred seventy-nine of these concerned votes which were allegedly cast by voters ineligible to vote in the Democratic primary. No effort was made to present evidence which would indicate any of these questioned votes were cast for appellant Nine or any of the three candidates for Assembly.

It also appears that 84 more voters were registered on the public counter than signed in on the buff cards. But, their failure to sign the buff cards may have been attributable to an oversight of the inspectors. Each of the 84 voters was in fact qualified to vote in the June 23, 1970 primary, and none of these voters was challenged, although there was no probative evidence, as found by the Referee, that Stevenson was not represented

by watchers at the polls. Said the Referee: " There is a failure of competent evidence to show whether the different election districts were, in fact, manned by poll watchers of either side ". If represented, the failure to object is tantamount to a waiver. (*Matter of McGuinness* v. *DeSapio,* 9 A D 2d 65.) Indeed, it has been further held that: " while the right to attend and protest is permissive, a failure to do so is a waiver of such objections." (See *Matter of Schor* v. *Flagg,* N. Y. L. J., Oct. 8, 1953, p. 693, col. 1, BRENNER, J., affd. 282 App. Div. 885 and *Matter of Moritt* v. *Cohen,* 255 App. Div. 804, affd. 279 N. Y. 617.)

Furthermore, included among these 84 instances were situations where a signature was on the buff card but there was no date alongside the signature. Under these circumstances, it was incumbent upon petitioner to prove such voter's signature was not placed there on the date of the primary and such voter did not vote in the June 23, 1970 primary. In our view, the Referee erred in concluding that where he had doubt as to when the signature appeared on the buff card he should rule, as he did, that it was not placed there on the date of the primary. This, notwithstanding the fact that there was " a signature above that of the '69 signature." He said: " I'm going to rule that it cannot be said whether the party came in on June 23 or for the School Election and therefore I'm not going to count it." In so doing he clearly disregarded the proper placement of the burden of proof. And it may be observed, as noted in the dissenting memorandum in *Matter of Ippolito* v. *Power* (22 N Y 2d 594, 600) : " It is well settled that the results of an election are entitled to a presumption of regularity and that a party attempting to impeach these results carries the burden of proof."

Applying the " probabilities " test, we do not see how we can rationally conclude candidate Stevenson would have obtained 73 of these 84 votes, the number representing his defeat, when there were two other candidates, one of whom, Brooks, obtained 502 votes already. See *Matter of Mack* v. *Cocuzzo* (22 N Y 2d 901) referred to in *Ippolito* at page 599. " Obviously, a change in the result would require that the bulk of the questioned votes be shifted to the loser, a gross improbability, or even impossibility, before it could be inferred that the irregularities were influential (see *Matter of Badillo* v. *Santangelo,* 15 A D 2d 341)." (*Matter of Ippolito* v. *Power, supra,* p. 597.) There was, of course, " a mathematical possibility." That is not sufficient to overturn an election, no matter how close. (*Matter of Badillo* v. *Santangelo, supra.*) Nor should we strain to order a new election every time the results are close " without evidence of fraud or other intentional misconduct."

In our view, the petitioner has not sustained his burden of proof, no fraud is present or even intimated, and thus we find insufficient grounds for the direction of another election.

Accordingly, the order entered August 26, 1970, confirming report of Special Referee and directing a new primary election in the 78th Assembly District, Bronx County, for the office of Democratic candidate for member of Assembly, should be unanimously reversed upon the law and upon the facts, and the petition dismissed, without costs.

EAGER, J. P., CAPOZZOLI, McGIVERN, MARKEWICH and McNALLY, JJ., concur.

Order entered on August 26, 1970 unanimously reversed, on the law and on the facts, without costs and without disbursements, and the petition dismissed.