VALERIE FAITH LaPORTA, GENEVA M. TRENT, CHARLES SWIFT and R. HAL SMITH, Petitioners, *v.* ROBERT BROADBENT, MYRON LEAVITT, JACK PETITTI, R. J. "DICK" RONZONE, TOM WIESNER, AARON WILLIAMS and JAMES "SAILOR" RYAN, as Commissioners of the CLARK COUNTY BOARD OF COMMISSIONERS; MYRON LEAVITT, AARON WILLIAMS, JACK PETITTI, Individually; STANTON B. COLTON; LORETTA BOWMAN; WILLIAM SWACKHAMER; COLLEEN MESCHNACK; BETTY L. GILES; LOLA N. KIRK; THOMAS M. WILLIAMS; LENORE W. CRAMER; JOHN E. "JACK" JEFFERY; WARREN FOOT; POLL SECURITY GUARDS I–III; and JOHN DOES I–XX, Respondents.

No. 7986

January 28, 1975                          530 P.2d 1404

*Rose, Norwood, Edwards & Hunt, Ltd.,* of Las Vegas, for Petitioners.

*I. R. Ashleman, II,* and *Roy A. Woofter,* District Attorney, Clark County, for Respondents.

28

**OPINION**

By the Court, ZENOFF, J.:

Petitioner R. Hal Smith was a candidate for election in State Assembly District No. 22 on November 5, 1974. For a period of approximately three hours of that day some voters who signed to vote in Precinct No. 25 were unable to cast a ballot for Smith or the other candidate, John E. "Jack" Jeffery, because a ballot had become stuck in the voting apparatus and the mechanism had to be replaced. Unnoticed by anyone, the substituted mechanism did not contain the names of Smith or Jeffery but was instead a list of candidates that belonged to another precinct.

After the error was discovered the correct list was inserted but in the meantime an unknown number of persons had cast their ballots but not for either Jeffery or Smith. Jeffery won the election by six votes which Smith contests. He made demand upon the Board of Commissioners of Clark County for a revote as provided in NRS 293.465.[1]

The board voted three to three, one member absent, and because of the tie the request before the board was denied. Without a record of the proceedings before the commissioners

---

[1]NRS 293.465: Loss, destruction of ballots in Precinct or District; new election ordered by County Commissioners.   If an election is prevented in any Precinct or District by reason of the loss or destruction of the ballots intended for that Precinct, or *any other cause,* the election officers for such Precinct or District *shall make* an affidavit setting forth such fact and transmitted to the County Commissioners. Upon receipt of such affidavit and upon application of any Candidate for office to be voted for by the registered voters of such Precinct or District, the County Commissioners *shall order* a new election in such Precinct or District. (Emphasis added.)

we do not know in detail and with accuracy what evidence was presented.

Petitioner sought a writ of mandamus from this court to compel the revote provided in the statute. After conference between the parties before this court a majority hereof on December 13, 1974 issued a peremptory writ of mandamus that the Board of County Commissioners order the revote in Precinct No. 25 of Henderson, Nevada, in accordance with the statute and further provided that only those voters who appeared on November 5, 1974 in Henderson Precinct No. 25 and signed to vote be permitted to cast ballots in the revote election. The order also stated that absentee ballots, if any, heretofore cast for the November 5 election shall be counted.

This is the written opinion with the dissent of two members to explain the writ of mandamus.

1. Under Article 6, Section 4 of the Nevada Constitution, this court has jurisdiction to entertain petitions for mandamus. Usually we require that such requests be presented to a district court first, but in this case we exercise our discretion in favor of an initial hearing because the public interest requires an early determination of the issue. The legislature is scheduled to commence January 20, 1975 and delay in the selection of this representative would hamper the legislative process. To require the presentation to be first made to the district court in all probability would end here in any event, thus we avoid the delay.

2. NRS 293.465 is unequivocal on the subject of a faulty election when the ballots are unavailable. If an election is prevented as it was here by absence of ballots the statute specifically states that the county commissioners shall order a new election in the precinct where the ballots were absent.[2]

Evidence before the county commissioners as to who and how many of the voters would have voted for Smith or Jeffery would destroy the secrecy of their ballot and is not pertinent when the question is what happens when the ballots aren't

---

[2]Our statutes have not been kept current with the transposition of voting "machines" to the present use of "computers." The distinction for the purposes of this case is not important however. Whatever voting device designates the candidates is the ballot.

there but the voters are. The statute makes no provision that voters appear and state how they would have voted nor how many.

The fundamentals of suffrage require that electors shall have the opportunity to participate in elections and that the real will of the electors should not be defeated by errors in the conduct of an election. NRS 293.127.

Writ granted.

MOWBRAY and BATJER, JJ., concur.

GUNDERSON, C. J., with whom THOMPSON, J., agrees, dissenting:

We do not feel the issue here is whether "the fundamentals of suffrage require that electors shall have the opportunity to participate in elections and that the real will of the electors should not be defeated by errors in the conduct of an election."

As we view it, the issue is: Without any record before us and without notice, should this court have mandated a partial new election allowing persons registered in one precinct to have a second opportunity to vote again long after election day, even though few of them used the defective voting device, though none then complained of "loss of suffrage," and though none has said he either wanted to or tried to vote for any assembly candidate? Or again, should this court have intervened without record or notice, although nothing evidenced prejudice to petitioner, though statistical probabilities indicated prejudice was highly unlikely, and though political injustice and disfranchisement were likelier to follow than was political justice?

Since respondent Jeffery in fact won again in the second, partial election our brethren have allowed to his opponent, our differences with the majority now are academic, and accordingly we state only the basics of our position.

First, we note that the majority are correct in saying: "Without a record of the proceedings before the commissioners we do not know in detail and with accuracy what evidence was presented." Of course, it was petitioner's burden to bring this court a record impelling a determination that the county commissioners' action was arbitrary and capricious. Toco v. Gragson, 90 Nev. 131, 520 P.2d 616 (1974); State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973). And to us, it seems inappropriate to make such a finding without a record, particularly since this court usually holds that an absent record is presumed to support administrative or judicial action. Snarr Advertising, Inc. v. Sturgeon, 91 Nev. 11, 530 P.2d 762 (1975); City of Las Vegas v. Bolden, 89 Nev. 526, 516 P.2d

110 (1973); Meakin v. Meakin, 88 Nev. 25, 492 P.2d 1304 (1972); Leeming v. Leeming, 87 Nev. 530, 490 P.2d 342 (1971); Pfister v. Shelton, 69 Nev. 309, 250 P.2d 239 (1952).

Second, we note the court here has not just acted without a record of the proceedings before the county commission, but also without due notice to respondents. This court's rules establish orderly procedures to frame and determine legal and factual issues in extraordinary writ cases. See: NRAP 21. In this case, however, following an informal conference orally scheduled by one justice, the court not only determined to entertain the petition for writ of mandamus, but to grant it *instanter*. This not only required suspension of our rules, but we believe contravened an express provision of Nevada law, requiring 10 days notice on applications for peremptory writs of mandamus. NRS 34.200. Hence, under our prior holdings, the court's action in this case seems void for want of requisite notice, notwithstanding the presence of respondents' counsel when the court announced its intention to grant a peremptory writ. State ex rel. Jurich v. McFadden, 43 Nev. 140, 182 P. 745 (1919); see also, Turner v. Saka, 90 Nev. 54, 518 P.2d 608 (1974), and cases cited therein. What makes this course of action appear especially inappropriate to us is that the court has seemingly ignored a very difficult constitutional issue, i.e., whether our state Constitution vests the Nevada Assembly with exclusive jurisdiction to decide whether faulty election equipment materially has affected an election's outcome. (See: Nev. Const. Art. 4, § 6, which provides that "[e]ach House shall judge the qualifications, elections and returns of its own members.") By assuming that courts have jurisdiction, the court here reached a result exactly contrary to one reached four years ago, in a proceeding involving the instant petitioner's 1970 opponent.[1] In light of our prior holding, it seems to us respondents' contention that the Nevada Assembly has exclusive jurisdiction of the instant controversy was sufficiently serious to warrant full briefing and consideration of the issue.

Third, many recitations of fact in the majority opinion are based entirely on arguments of petitioner's counsel; for, as noted, petitioner's counsel brought us no record, and the majority's ruling precluded respondents' counsel from doing so. However, it does seem agreed that only 6 to 10 voters used the

---

[1]Although this court did not articulate its reasoning in Koontz and Smith v. First Judicial District Court, No. 6528, this court held that a district court could not decide an election controversy caused by a defective voting machine, and required that controversy to be judged by the Assembly.

defective device, which was the last in a line and used only when others were in use. It also seems agreed that, if some of such voters attempted to vote for an assembly candidate, and thus utilized the improperly labeled punch-holes above the names of petitioner Smith and respondent Jeffery, then petitioner Smith almost surely benefited from these mistakes which the majority assume took place. As petitioner's counsel concedes, the winning candidate in the other assembly race, Nash Sena, whose name briefly appeared over petitioner's punch-hole, "ran like a scalded dog." Sena defeated his opponent, Billy K. Dedmon, by a ratio of seven-to-two. Thus, the chances are remote that the brief appearance of Sena's name over Smith's punch-hole caused the latter's loss, even assuming that some of the 6 to 10 voters who used the defective device endeavored to vote in the Sena-Dedmon race and thus inadvertently marked their computer cards in favor of Smith or Jeffery.

Fourth, we note that at the time this court issued its peremptory writ, petitioner Smith had mandamus proceedings pending in the lower court, set for hearing the following week. It would, we submit, have been consistent with accepted practice to let the district court proceed; for this court will not ordinarily entertain mandamus, when other adequate remedies are available elsewhere. (By that time, incidentally, the record of proceedings before the county commission could have been prepared, and what actually was presented to that body would have been known.)