OPINION OF THE COURT
Theodore A. Kelly, J.
This is a proceeding to annul the results of an election held in the Village of Pomona on March 18, 1986 and for a new election to elect a Mayor and two trustees.
Petitioner Joseph Carbery is the incumbent Mayor of the Village of Pomona. Petitioner Bob Wallack and respondent Ronald Rothberg (Rothberg) are incumbent trustees. Their respective terms of office expire on April 6, 1986 and each of them was a candidate for reelection on March 18, 1986.
Parties opposed to their reelection organized a write-in campaign on behalf of respondents Melvin Klingher (Klingher), Herbert Marshall (Marshall) and Alvin Appell (Appell). About one hour before the polls closed, the only voting machine broke down. Voters were then permitted to write the names of candidates on slips of paper which were dropped into an open cardboard box.
The canvass of the vote taken at the election showed the following result:
*729 Mayor Line 1
Klingher 169
Carbery 167
1st Trustee
Marshall 175
Klingher 17
Appell 1
Wallack 165
2nd Trustee (2) Line 3
Appell 166
Marshall 15
Elaine Adler 1
Rothberg 169
On March 18, 1986 the candidates requested the Rockland County Board of Elections (the Board) to recanvass and determine the validity of the votes cast at the election. The Board conducted the recanvass on March 21, 1986. On March 25, 1986 the Board reported the following tabulation to the clerk.
Machine Ballot Box Total
Mayor: Joseph Carbery 147 19 166
Melvin Klingher 132 38 170
Trustee: Bob Wallack 148 16 164
Ronald Rothberg 151 17 168
Herbert Marshall 130 54 184
Alvin Appell 121 35 156
The Board, however, refused to certify that any candidate had been elected to any position. In their letter to the clerk, respondents Sandra Lefever and Shirley Huested, the Board’s commissioners, stated that proper procedures had not been followed in the use of emergency ballots since scraps of papers were deposited into an open box which was apparently not under the control of the election inspectors; that some of the scraps bore a public counter number and others had no identifying marks; that the inspectors registered 75 individuals whose names did not appear on the village voting list and allowed them to vote; and that there was a large discrepancy in the number of voters, since 421 voters signed to vote but only 368 people actually voted. Several votes using only the last names of Klingher, Appell and Marshall and one vote for "Marvin” Klingher were not counted.
Petitioners allege that the voting procedure was "fatally flawed” and that a new election should be held. Petitioners *730 contend that the breakdown of the voting machine caused considerable chaos and confusion, thereby preventing an orderly voting process; that many voters were turned away and were unable to vote; that voters simply wrote names on slips of papers which were dropped into a makeshift cardboard box; and that, in the "turmoil”, several people voted more than once.
Marshall, Klingher and Appell oppose petitioners’ application. They contend that the petition is insufficient and that the court, consequently, is without authority to annul the election; that the clerk and the Board have wrongfully refused to certify the results of the election and the recanvass; that the clerk and the Board failed to count votes which only used their last names; and that they counted one vote cast for petitioners and Rothberg which included only their last names. They seek to dismiss the petition and judgment directing that the Board and the clerk, after counting the votes referred to above, certify the results of the election and to declare that they have been elected. In the alternative they seek to have their names added to the ballot as candidates if a new election is ordered.
Counsel have stipulated and agreed to the following facts except for the Rockland County Attorney as hereinafter noted: (1) that the only voting machine in use ceased to operate approximately one hour before the polls closed (the County Attorney could not so stipulate); (2) that some voters who signed to vote did not vote (the County Attorney could not so stipulate); (3) that the Board notified the clerk of the result of its recanvass on March 25, 1986; (4) that the tally sheets of the recanvass annexed to Klingher’s answer as exhibit D are correct; (5) that in its recanvass the Board refused to count 10 votes for Klingher, 11 votes for Marshall and 13 votes for Appell because only their last names appeared, and that one vote for Klingher was not counted because his named appeared as "Marvin Klingher”; (6) that a paper ballot containing only the last names of petitioners and Rothberg was counted (the County Attorney could not so stipulate); (7) that people placed paper slips containing names into a cardboard box after the voting machine failed to operate (the County Attorney could not so stipulate); (8) that, except for its letter of March 25, 1986, the Board made no written notification to the clerk of the result of the recanvass; that the letter of March 25 constituted notification pursuant to Election Law § 15-126; and that the Board has refused to certify the results *731 of its recanvass. Marshall and Appell have also withdrawn their second counterclaim.
Rothberg has submitted a letter, dated March 31, 1986, in which he states that he has not engaged counsel and that he will accept the court’s decision. The clerk, although served with the order to show cause herein, has failed to appear.
There has been no claim made by petitioners herein of any fraud or misconduct in the manner in which the election was conducted and, when this proceeding was argued before the court, petitioners’ attorney conceded that he had no evidentiary proof to support the assertions that there was chaos and con fusion at the polling place; that voters were turned away and were unable to vote; and that a number of voters voted more than once. The only claim made by petitioners concerns an irregularity, specifically the use of improper paper ballots and an open box as a depository for those ballots. In such a case, the unsuccessful candidate has the burden of proving that the irregularity was of such a nature as to establish the probability that the result of the election would have been changed by a shift in the questioned votes (Matter of Stevenson v Power, 35 AD2d 121, affd 27 NY2d 152). The mere showing that an election was mathematically close is not enough to justify a new election (Matter of Straus v Power, 22 NY2d 886). A new election may be ordered only when the irregularities render impossible a determination as to who rightfully was elected (Matter of De Martini v Power, 27 NY2d 149). The petitioners herein have clearly failed to sustain their required burden of proof.
In addition, the court finds that the emergency ballot procedure was proper. Election Law § 7-120 (1) allows the use of emergency ballots if a voting machine becomes out of order during an election. Such ballots, "printed or written, and of any suitable form,” may be used for the taking of votes. If the supply of official ballots is exhausted, then emergency ballots are to be prepared, printed or written, as nearly in the form of the official ballots as practicable (Election Law § 7-120 [2]). Write-in ballots, on the other hand, are ballots voted for any person whose name does not appear on the machine as a nominated or designated candidate for public office (Election Law § 8-308 [1]).
The court has examined the paper ballots deposited into the cardboard box which was utilized after the voting machine malfunctioned. There were 54 pieces of paper in the box. Of *732 that total, 42 pieces contain the names of the candidates for whom the vote was cast and indicate the office to which the candidate was to be elected. The remaining 12 pieces contain only the names of individuals. There is nothing in the record to indicate that this manner of voting was unsupervised by the inspectors. There is also nothing to indicate that any form of ballot was made available to voters other than blank pieces of papers upon which they could write the names of the candidates of their choice. Since Marshall, Klingher and Appell were write-in candidates whose names did not appear on the official ballot, it would have been inappropriate to circulate an emergency ballot in the form of the official ballot. The court, therefore, finds that the form of emergency ballot which was used was sufficient and rejects both petitioners’ and the Board’s contention that the balloting was improper and tainted the election result.
The votes cast for Klingher, Marshall and Appell by using their last names and the vote cast for "Marvin Klingher” should also have been counted in the canvass and the recanvass. It is apparent that these individuals organized a campaign for write-in votes on their behalf, and their attorneys have submitted as an exhibit a flyer which shows their clients’ names, and demonstrates the manner in which write-in votes on their behalf were to be recorded. It is clear to the court that voters who wrote in the last names of Klingher, Marshall and Appell intended to vote for them (see, Hanney v Commissioner of Elections, 59 AD2d 707; Matter of Bennett v Board of Elections, 10 Misc 2d 804, affd 6 AD2d 989). The fact that Melvin Klingher has a brother named Leon Klingher, who is also a resident of Pomona, should not invalidate the votes case for him using only his last name. Leon Klingher was not a candidate and it is apparent that these votes were not intended for him. In matters such as these, the intent of the voters should not be frustrated by a slavish adherence to technical rules. The ultimate objective should be a realistic approach that will produce an honest and just result (Matter of Pauly v Mahoney, 49 AD2d 1014, appeal dismissed 37 NY2d 887).
There remains, however, the issue of whether the Board should certify the results of its recanvass. The procedure for a recanvass by the County Board of Elections is contained in Election Law § 15-126 (3) which is specifically applicable to village elections. The statute requires the Board to complete the recanvass within five days and to "notify the village clerk *733 of the result.” This language, however, must be contrasted with Election Law § 9-210 since that section is applicable to village elections to the extent that it is not inconsistent with article 15 (Election Law § 15-100). Section 9-210 requires the canvassing board to make a statement showing the result of the canvass for each office. The statement must set forth all votes cast for all candidates for each office; the name of each candidate; the number of votes so cast for each candidate. The statement must be certified as correct over the signatures of the members of the Board. I find that section 9-210 is applicable here since it is not inconsistent with Election Law § 15-126 (3).
On proceedings as to the casting and canvass of ballots, the court may direct a recanvass or the correction of an error, or the performance of any duty imposed by law on a State, county, city, town or village board of inspectors or canvassers (Election Law § 16-106 [4]). The court has heretofore determined that the paper emergency ballot procedure employed at the election was not improper. The fact that certain ballots may have been marked with a counter number as noted by the Board, was a mere irregularity and there is no evidentiary support for the Board’s conclusion that the ballot box was not under the control of the inspectors. There is also no evidentiary support for the Board’s understanding that the inspectors registered 75 additional persons and permitted them to vote. Finally, it would be pure speculation to attempt to determine why only 368 people voted at the election when 421 people had signed to vote.
For the reasons heretofore stated, petitioner’s application to annul the election and for a new election is denied and the petition is dismissed. The County Board of Elections shall recanvass the votes cast at the election and count those votes cast for Klingher, Marshall and Appell using their last names only and the vote cast for "Marvin Klingher”. The Board shall then certify the result of the recanvass and notify the village clerk. The village clerk shall notify the persons elected as provided for in Election Law § 15-126 (3) and § 15-128.