**ADELBERT M. BRYAN, Plaintiff**

**v.**

**HENRITA TODMAN, Supervisor of Election and THE ST. CROIX BOARD OF ELECTIONS, Defendant**

Civil No. 1173/1992

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

December 17, 1992

ADELBERT M. BRYAN, Frederiksted, St. Croix, V.I., *pro se*

ELLIOT M. DAVIS, ESQ. (Assistant Attorney General), St. Thomas, V.I., *for defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

█ This case is before the Court on the motion of Plaintiff, Senator Adelbert M. Bryan, for a temporary restraining order. Plaintiff seeks to restrain the defendants from certifying the November 3, 1992 general election on St. Croix. Alternatively, plaintiff seeks a declaratory judgment from the Court that the election is null and void and also wants the Court to order a new election. Since the act which plaintiff seeks to enjoin has already occurred, that is, the election has already been certified, plaintiff's motion for a temporary restraining order must be denied because of mootness. However, the Court will determine whether the alternative relief sought

by plaintiff should be granted. For the reasons which follow, the Court must deny plaintiff's request for a declaratory judgment.

## FACTS

On November 3, 1992, a general election was held in the United States Virgin Islands in which Senator Adelbert M. Bryan, (hereafter referred to as "plaintiff"), was seeking reelection. On that same day, plaintiff filed a complaint with the St. Croix Board of Elections (hereafter referred to as "the Board") alleging violations of the Virgin Islands election laws. The Board took oral testimony regarding the complaint on November 10, 1992. On November 17, 1992, plaintiff submitted a memorandum to the Board again enumerating instances of alleged violations of the Virgin Islands Code and on November 20, 1992, the Board issued a final decision on the complaints filed by the plaintiff. The Board found that the alleged violations of the Virgin Islands Code did not affect the results of the November 3, 1992 election. On November 21, 1992, the Board certified the election.

Thereafter, on November 25, 1992, plaintiff filed a complaint in this Court alleging various violations of the election laws in the November 3, 1992 election and other irregularities.

## DISCUSSION

██ No Court should invalidate an election and order a new one unless where there is a finding of fraud or deprivation of rights which would implicate the Constitution of the United States, Write-in Adelbert Bryan Committee and Adelbert Bryan v. Joint Board of Election of the V.I. et al. and the 17th Legislature, Civil No. 976/1988 (Terr. Ct. St. Croix Jan. 20, 1989) (citations omitted), unless there is a clear statutory provision requiring it, State ex rel. Wahl v. Richards, 64 A.2d 400 (Del. Sup. Ct. 1949); LaPorta v. Broadnet, 530 P.2d 1404 (Nev. 1975), or unless violations of the statutory scheme were pervasive enough to affect or change the result of the election. Swift v. Lefever, 467 N.Y.S.2d 627 (1983), aff'd 469 N.Y.S.2d 696 (1983). Where irregularities are alleged, the burden of proof is on the plaintiff to show that the irregularities affect or change the result of the election by the questioned votes. See Carberry v. Carberry, 501 N.Y.S.2d 981 (1986) (citing Matter of Stevenson v. Power, 314 N.Y.S.2d 185, aff'd, 314 N.Y.S.2d 705).

## I. *Statutory Construction*

■ In the instant case, fraud was neither alleged nor proved.[1] Instead, plaintiff grounds his request for a declaratory judgment by this Court that the November 3, 1992 Virgin Islands General Election is void on alleged violations of the United States Constitution and laws of the Virgin Islands. Specifically, plaintiff claims that:

1) There were no sample machines at the polling places in the St. Croix District as required by 18 V.I.C. § 505;
2) There were not enough voting machines at some polling places thereby discouraging some voters from exercising their Constitutional right in violation of 18 V.I.C. § 196;
3) Many individuals, after standing in line at one polling area, were told after the other polling areas were closed, that their polling area had been changed thereby denying them their Constitutional right to vote;
4) Voters were turned back and locked out at Grove Place in Violation of the Voting Rights Act of 1964 and in violation of 18 V.I.C. § 555;
5) Voting machines were not tested, programmed nor tabulated publicly in violation of 18 V.I.C. § 506;
6) Over 1,600 voters were assigned to the Grove Place polling area in violation of 18 V.I.C. § 194;
7) No list of qualified voters was distributed in violation of 18 V.I.C. § 4;
8) No facsimile or sample ballots were available to voters or candidates in violation of 18 V.I.C. § 503;
9) Machines were not placed on public exhibition in suitable places for 15 days in violation of 18 V.I.C. § 504;
10) Shoup Corporation was allowed and/or violated the laws of the V.I. in printing out candidates without authority to do so in violation of 18 V.I.C. §§ 351, 354, 355, and 357;
11) There were two different times on the printouts from the Shoup machines in violation of 18 V.I.C. § 507;

---

[1] While plaintiff's complaint is devoid of any allegations of fraud, during the trial he tried to paint a picture of fraud and deceit on the part of the R. F. Shoup Corporation. However, the evidence relied upon by the plaintiff falls far short of that required for the invalidation of an election for fraud. At best, the evidence rises to the level of speculation and conjecture.

12) At least three candidates on the printout have the same amount of votes at two different places due to their programming of the data for printout;

13) The Board of election violated 18 V.I.C. § 627(a) by not acting timely on the results.

The Virgin Islands Code does not address the issue of a new election, but plaintiff claims all of the statutes are mandatory and that their violations require this Court to set aside the election.

■ It is arguable that the word "shall," used in all of the statutes listed above, is a clear manifestation of legislative mandatory intent. The use of the word "shall," however, is not dispositive in determining legislative intent and though the word serves as an important textual consideration in determining whether a statute is mandatory or directory, "what it naturally connotes can be overcome by other considerations." 3 Sutherland Statutory Construction § 57.03 (5th ed. 1992).

■■ When an election code is silent regarding new elections, courts distinguish between violations of directory and violations of mandatory provisions of law. See In re Smock, 68 A.2d 508, 511 (N.J. Super. 1949); Rector v. Northglenn Metropolitan Recreation District, 404 P.2d 534 (Colo. 1965); State ex. rel. Stabler v. Whittington, 290 A.2d 659 (Del. Super. Ct. 1972). "An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may be valid." 29 C.J.S. Elections § 214(2).

■ "In an election contest, the determination of whether a statutory provision is mandatory or directory depends upon certain criteria: (a) whether the statutory scheme expressly or impliedly provides that failure to follow the provision shall render the election void; (2) whether the failure interfered in any way with the result of the election; (3) whether any person legally entitled to vote was not permitted to do so; (4) whether the polling place was chosen for an improper motive; and (5) whether any fraud occurred in or as a result of the selection of the improper method." Bryan, slip op. at 7–8, (quoting Cann, 218 N.E.2d at 836).

In Bryan, Judge Raymond L. Finch addressed the issue of statutory construction of the Virgin Islands election laws. In that case, Bryan, the same plaintiff as in the instant case, asked the Court to declare the November 8, 1988 Virgin Islands election void because

of alleged violations of the United States Constitution and the laws of the Virgin Islands. Bryan claimei that the election board violated 18 V.I.C. § 506(a) because the Supervisor of Elections did not test the electronic voting machines in the presence of representatives of the political parties, the press and the public. Bryan also maintained that the term "shall" in § 506(a) was a clear manifestation of legislative mandatory intent. The Court found that the statute is directory because it does not go to the essence of the election and is intended to merely regulate the conduct of the election. The Court also found that the statutory scheme does not expressly or impliedly provide that a failure to adhere to its provision shall render an election void, and further found that none of the irregularities were the result of fraud or failure to follow § 506(a).

■ Like the Court in Bryan, this Court finds the statutory scheme suggests that sections 4, 194, 196, 503, 504, 505, 506, and 627(a) of Title 18 are all directory because they do not go to the merits of the election and are intended to merely regulate the conduct of the election. Moreover, none of these statutes provide that a failure to adhere to its provision shall render an election void. Finally, none of the irregularities in the 1992 election were a result of fraud.

## II. *Statutory Violations*

Plaintiff claims that even if fraud has not been shown and there was only a violation of directory provisions of the election code, a new election is still warranted pursuant to Kerrigan v. Vetsch, 71 N.W.2d 652 (Minn. 1955). In that case, the Court ruled that:

> "Although admittedly no fraud has been shown in the present contest, there is no necessity of proving actual fraud in all cases. (citation omitted) It is sufficient if there has been such a wholesale violation of the election laws, even be they only directory, that so great an opportunity for fraud exists as to impeach the integrity of the ballot."

Vetsch, however, is distinguishable from this case and has been distinguished by other courts. In Hahn v. Graham, 225 N.W.2d 385 (Minn. 1975), the Supreme Court of Minnesota refused to invalidate an election in the absence of proof that the irregularity affected the outcome or was a product of fraud or bad faith. The Hahn Court found that the irregularities in Vetsch were so nu-

merous and substantial as to cast doubt upon the integrity of the vote and as to constitute bad faith on the part of the election officials. Because the irregularities in Hahn did not cast doubt upon the integrity of the vote and there was no showing of bad faith on the part of the election officials, the court refused to invalidate the election.

In Green v. Independent Consolidated School Dist. No. 1, 89 N.W.2d 12 (Minn. 1958), the Supreme Court of Minnesota also distinguished Vetsch and refused to invalidate an election because the irregularities involved no fraud and did not deprive the voters of the opportunity to express their will on the merits. The Green Court also found that the election officials exercised good faith and made a serious and bona fide attempt to conform to law to the end that the rights of the voters were protected and respected.

For the Green court, the distinction turned on an absence of all effort to comply with the law, which is the equivalent of bad faith. *Id.* at 18. "There were so many serious violations in the Vetsch case and such a complete indifference to all law that there could be no reasonable assurance that the result of the election reflected the will of the voters." *Id.* Amongst the many violations in the Vetsch case, 59 ballots were unaccounted for when 41 votes could have changed the final result; one of the individuals who took over the counting of the ballots had lost a similar election contest to one of the candidates and expressed an opinion that he would like to see his personal friend, Vetsch, win; after all the county precincts were in, Vetsch himself appeared at the polling place and informed the persons counting the La Crescent village ballots what the results were in the rest of the county and six hours after all other precincts had reported, La Crescent reported a vote which swung the election results to Vetsch.

 In the case at bar, there is no doubt that there were violations of the Virgin Islands election laws as well as other irregularities.[2] However, plaintiff failed to show how any of these irregu-

---

[2] On December 7, 1992, the first day of trial, the parties stipulated to the following facts:
1) there were no instruction models of the electronic voting machines used in the general election as required by 18 V.I.C. § 505;
2) there was an insufficient number of electronic voting machines placed at

larities affected the outcome of the election or that there was such a striking absence of effort to comply with any election law that no confidence could be placed in the integrity of the 1992 Virgin Islands election. Because plaintiff has failed to carry his burden of proof, this court must find that the irregularities were not so substantial as to cast doubt upon the integrity of the vote and as to constitute bad faith on the part of the election officials.

### III. *Whether Any Voters Were Denied The Right To Vote*

Plaintiff brought forward two witnesses in an effort to show that they were denied their right to vote. One witness testified that when she went to cast her vote, she was turned away and was unable to vote. However, the Board presented credible and sufficient evidence to demonstrate that she was not eligible to vote in the 1992 election because her registration had been cancelled pursuant to 16 V.I.C. § 118 since she had failed to vote in the two previous general elections. The other witness testified that there was an abnormal blinking light on the machine when she went to cast her vote. However, plaintiff failed to show that the blinking light was caused by some defect in the voting machine or that the vote of his witness did not register as a result of the blinking light.

Plaintiff claims that many individuals were denied their right to vote because they were told that their polling area had been changed after the other polling areas were closed. He has failed to present any proof with regard to that contention. Similarly, plaintiff failed to present any evidence that any voter was locked out at the Grove Place polling district. The evidence presented regarding Grove Place indicates that the polls were open at 7:00 am. as required by 18 V.I.C. § 555. However, Grove Place voters did not begin voting at 7:00 a.m. because the voting registers for Grove Place had been mistakenly taken to the St. Gerard's Hall polling district. When the error was discovered, it was promptly rectified and voters began voting in Grove Place at 7:40 a.m.

---

certain polling places in order to comply with provisions of 18 V.I.C. § 196(b);
3) over 1600 voters were assigned to the Grove Place polling district;
4) no list of qualified voters was distributed as required by 18 V.I.C. § 4;
5) certain erroneous times appear on the printout compiled from voting tabulations of the electronic voting machines;
6) the database information was programmed in Pennsylvania using 1990 general data.

■ There is simply no evidence that any qualified voter was denied the right to vote. To successfully carry his burden, plaintiff had to prove that a number of qualified voters, sufficient to affect the outcome of the election, were denied the right to vote because of the irregularities complained of.[3] See Haynes v. Williams, 446 So. 2d 750 (La. Ct. App. 1st Cir. 1983) (holding that unsuccessful candidate had not shown that a number of qualified voters sufficient to change result of election were denied the right to vote by election officials). This he clearly failed to do.

## IV. *Other Irregularities*

■ Plaintiff further claims that the Shoup Corporation violated the laws of the Virgin Islands when it produced a general election results printout which did not show the candidates' names in the order in which they appeared on the official ballot. In support of his contention, plaintiff cited sections 351, 354, 355, and 357 of Title 18 of the Virgin Islands Code. All of the sections cited by plaintiff are applicable to primary elections only, and therefore, they do not support his position. Moreover, there is no legal or contractual requirement that the computer printout of the voting results of a general election must conform to the order of the candidates' names on the official ballot.

■ Additionally, plaintiff claims that the database information was programmed in Pennsylvania using 1990 General Election data without legal authority to do so. Plaintiff does not cite any statutory or contractual provisions in support of his claim. In fact, there is no statutory or contractual requirement that a new database must be created for every general election.

A final word is in order, for this Court cannot conclude without some reference to the violations of our election laws. This opinion should not be interpreted to mean that this Court condones any violations of the Virgin Islands election laws. This Court does not. The Legislature, the Board of Elections and other election officials should take heed of the 1992 violations and must act in concert to ensure that future elections are in full compliance with the Virgin

---

[3] Exclusive of the absentee ballots, plaintiff lost his bid for re-election by three hundred and fifteen votes (315). See Plaintiff's exhibit 8. Plaintiff failed to present evidence that at least 315 eligible voters were denied their right to vote and that these voters would have voted for him.

Islands election laws. The people of the Virgin Islands deserve no less.

## CONCLUSION

Because plaintiff failed to prove that a number of qualified voters sufficient to change the result of the election were denied the right to vote or that the violations of the Virgin Islands Election Code changed or affected the results of the election, plaintiff's request for a declaratory judgment must be denied.

IN ACCORDANCE with memorandum opinion of even date, it is hereby

ORDERED that plaintiff's request for a temporary restraining order and preliminary injunction be, and is, hereby denied; and it is further

ORDERED that plaintiff's request for a declaratory judgment be, and is, hereby denied; and it is finally

ORDERED that plaintiff's complaint be and is hereby dismissed. Each party shall bear their own costs.

DONE AND SO ORDERED this 17th day of December, 1992.