137 Nev., Advance Opinion 25

IN THE SUPREME COURT OF THE STATE OF NEVADA

STAVROS ANTHONY, AN
INDIVIDUAL,
Appellant,
vs.
ROSS MILLER, AN INDIVIDUAL; AND
CLARK COUNTY BOARD OF
COMMISSIONERS, A LOCAL
GOVERNMENT ENTITY,
Respondents.

No. 82269

FILED

JUN 10 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a final judgment dismissing a complaint in an election matter. Eighth Judicial District Court, Clark County; Elizabeth Gonzalez, Judge.

*Affirmed.*

Hutchison & Steffen, PLLC, and Michael K. Wall, Mark A. Hutchison, Jacob A. Reynolds, and Piers R. Tueller, Las Vegas,
for Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager and Daniel Bravo, Las Vegas; Clark Hill PLLC and Dominic P. Gentile and John A. Hunt, Las Vegas,
for Respondent Ross Miller.

Steven B. Wolfson, District Attorney, and Mary-Anne Miller, County Counsel, Clark County,
for Respondent Clark County Board of Commissioners.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

---

[1]The Honorable Abbi Silver, Justice, voluntarily recused herself from participation in the decision of this matter.

21-16641

*OPINION*

By the Court, HARDESTY, C.J.:

Appellant Stavros Anthony lost by a margin of 15 votes in the November 3, 2020, general election for Clark County Commission District C. He argues that a new election is required pursuant to NRS 293.465 because the number of irregularities in the conduct of the election exceeded the narrow margin of victory. NRS 293.465 provides for a new election when "an election is prevented in any precinct or district by reason of the loss or destruction of the ballots intended for that precinct, or any other cause." We conclude that Anthony's challenge does not warrant a new election under NRS 293.465, as nothing prevented the election from occurring or voters from casting their votes in the election. Rather, when a candidate challenges an election based on errors in the conduct of the election, as Anthony has done here, an election contest pursuant to NRS 293.407-.435 is the exclusive mechanism for such a challenge. Because Anthony's challenge to the election under NRS 293.465 fails, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

Anthony ran against respondent Ross Miller in the November 3, 2020, general election for the Clark County Commission District C seat. Miller won by a margin of 15 votes[2] out of a total of 153,169 votes. When the Clark County Board of Commissioners met to canvass the results of the election, they learned from the Clark County Registrar of Voters that there were 139 unexplained discrepancies between the number of voters who signed in and the number of votes counted at the 218 precincts

---

[2]This was the total margin of victory following a recount.



that comprise District C. Because the number of discrepancies exceeded the margin of victory for the District C seat, the Registrar opined that he could not verify that those discrepancies did not affect the vote count.[3] Based on the Registrar's representations, the Board initially declined to certify the District C returns and voted to hold a special election for the District C seat. However, the Board later reconsidered its decision and voted to certify the District C returns.

Before the Board reconsidered its decision, Anthony applied to the Board for a new election pursuant to NRS 293.465 and submitted an affidavit from the Registrar regarding the unexplained discrepancies in the election. Anthony also sought declaratory and injunctive relief and a writ of mandamus from the district court requiring the Board to hold a new election for the District C seat pursuant to NRS 293.465. He argued that the Board must hold a new election where the number of irregularities in the conduct of the election called into question the accuracy of the vote count. In response, Miller argued that the election was not prevented in any precinct, as is necessary for NRS 293.465 to apply, and the only way Anthony could challenge the election results was by filing an election contest in the district court pursuant to NRS 293.410.

---

[3]The Registrar later explained that irreconcilable discrepancies occur in every election and could be caused by voters signing in but leaving before casting their ballots, staff inadvertently canceling voter sign-ins, staff failing to handle troublesome machines correctly and causing double entries, or staff reactivating voter cards. The Registrar was unable to identify the cause of the 139 unexplained discrepancies in District C.

The district court ultimately denied Anthony relief, finding that the election was not prevented within the meaning of NRS 293.465. The district court concluded that NRS 293.465 applies only when an election has been "prevented from occurring, for instance due to a natural disaster, or an accident suffered by the vehicle transmitting the ballots, or some similar incident." Because the "results of every race [had] been canvassed and certified [and no] precinct failed to complete its election," the district court concluded that a new election was not warranted under NRS 293.465. This appeal followed.[4]

## DISCUSSION

Anthony argues that the district court interpreted NRS 293.465 too narrowly and that an election is effectively "prevented" when errors in the conduct of the election make it impossible for the will of the voters to be known. Miller, on the other hand, argues that NRS 293.465 only concerns limited instances in which an election or part of an election is *literally* prevented from occurring.

Because this case presents an issue of statutory interpretation, our review is de novo. *Reno Newspapers, Inc. v. Haley*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010). When the statute's language is clear and unambiguous, we give effect to its plain meaning. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). If "a statute is susceptible of

---

[4]Anthony appeals from both the denial of his motion for a preliminary injunction and the denial of his motion for a writ of mandamus and dismissal of his complaint. We conclude that his appeal from the denial of injunctive relief is moot because the relief sought by Anthony in the district court—an injunction preventing the Board from certifying the District C election—can no longer be granted. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010) (concluding that an appeal is moot when the court cannot "grant effective relief" from the district court's order).

another reasonable interpretation, we must not give the statute a meaning that will nullify its operation, and we look to policy and reason for guidance." *Id.* at 109-10, 225 P.3d at 790. Further, this court will interpret a statute in harmony with other statutes whenever possible. *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 993, 860 P.2d 720, 723 (1993).

NRS 293.465 provides:

> If an election is prevented in any precinct or district by reason of the loss or destruction of the ballots intended for that precinct, or any other cause, the appropriate election officers in that precinct or district shall make an affidavit setting forth that fact and transmit it to the appropriate board of county commissioners. Upon receipt of the affidavit and upon the application of any candidate for any office to be voted for by the registered voters of that precinct or district, the board of county commissioners shall order a new election in that precinct or district.

This statute, by its plain terms, applies only when an election is "prevented" due to "the loss or destruction of ballots . . . or any other cause." No ballots were lost or destroyed here; instead, this appeal turns on whether the election was "prevented" by "any other cause." Anthony reads this language expansively as requiring a new election whenever errors in the conduct of the election may have affected the election results. We conclude that this interpretation is unreasonable when considered in the context of the election contest statutes in NRS Chapter 293.

NRS 293.407-.435 sets forth a process by which a candidate may contest an election based on errors in the conduct of the election. *See* NRS 293.410(2). An election contest must be filed in the district court within a short time after the election results are certified, NRS 293.407; NRS 293.413(2), and must be heard by the district court in an expedited

manner so that the "results of elections shall be determined as soon as practicable," NRS 293.413(2). If the district court finds that the election contest has merit, the district court may annul or set aside the election and, unless the district court declares a candidate elected, the certificate of election issued is void and the office is vacant. NRS 293.417(4). The grounds for an election contest include votes that were not properly counted, illegal votes that were improperly cast or counted, and errors by the election board "in conducting the election or in canvassing the returns." NRS 293.410(2)(c)(3), (2)(d). It is thus clear from the election-contest statutes that the Legislature has established a carefully delineated and accelerated procedure by which a candidate may challenge the conduct of the election, including any discrepancies or errors that may have affected the outcome of the election. And the Legislature has seen fit to grant the judiciary, not the Board, the authority to decide such a contested county election.

To interpret NRS 293.465 in the manner urged by Anthony—as requiring the Board to call for a new election when unexplained discrepancies exceed the margin of victory—would conflict with the election-contest framework. *See Szydel v. Markman*, 121 Nev. 453, 457, 117 P.3d 200, 202-03 (2005) (providing that when two unambiguous statutes "conflict with each other when applied to a specific factual situation," this court must attempt to harmonize them). In other words, Anthony's proffered interpretation would effectively give the Board the authority to decide certain challenges to an election, such as votes not being counted and errors in conducting the election, even though NRS 293.410 specifically provides for those challenges to be made to the district court. *See* NRS 293.407. And, under Anthony's interpretation, the remedy for such challenges would be a new election—the most costly and time-consuming possible remedy—rather

SUPREME COURT
OF
NEVADA

(O) 1947A

than annulment of the certificate of election and appointment of an individual to the office by the Governor. *See* NRS 244.040(1) (providing for a vacancy in the Board to be filled by appointment of the Governor). Moreover, unlike the election-contest statutes, NRS 293.465 does not set forth strict statutory timelines for challenging the election and litigating the time-sensitive challenge, which might prevent such challenges from being decided promptly.

Anthony nevertheless argues that an election contest is not the exclusive remedy under the circumstances here, where the number of unexplained discrepancies exceeds the margin of victory and those discrepancies could represent voters whose votes were counted twice or not at all. In support, he relies on *LaPorta v. Broadbent*, in which this court stated that "the real will of the electors should not be defeated by errors in the conduct of an election." 91 Nev. 27, 30, 530 P.2d 1404, 1406 (1975) (citing NRS 293.127, which provides for a liberal interpretation of the election statutes to ensure "the real will of the electors should not be defeated"). Based on the language in *LaPorta* and NRS 293.127, he argues that NRS 293.465 is not just about whether an election occurred but rather whether errors in conducting the election prevented an accurate determination of the real will of the voters. And, when the margin of victory is so narrow that discrepancies in the election make it impossible for the will of the voters to be known, he contends that the election has been "prevented" under NRS 293.465.

We conclude that Anthony reads *LaPorta* too broadly. *LaPorta* concerned an election in which a voting machine did not include the candidates for the state assembly race on the ballot, and we held that a new election was required because voters were prevented from being able to vote

SUPREME COURT
OF
NEVADA

(O) 1947A

7

for those candidates. The only question before this court in *LaPorta* was whether NRS 293.465 required a new election when ballots were unavailable. *See LaPorta*, 91 Nev. at 29-30, 530 P.2d at 1406 (characterizing the question before it as "what happens when the ballots aren't there but the voters are"); *id.* (stating that "NRS 293.465 is unequivocal on the subject of a faulty election when the ballots are unavailable" and concluding that the election was prevented by the "absence of ballots"). The statement relied upon by Anthony explains the need for a new election under those circumstances; it does not stand for the proposition that a new election is required whenever errors in the conduct of the election cast doubt on the election results. In fact, as our caselaw makes clear, the key purpose of requiring a new election when an election is prevented is to ensure the opportunity for voter participation in the election. *See id.* at 30, 530 P.2d at 1406 ("The fundamentals of suffrage require that electors shall have the opportunity to participate in elections . . . ."); *cf. State ex rel. McMillan v. Sadler*, 25 Nev. 131, 191, 58 P. 284, 296 (1899) (stating that a new election would protect voters' constitutional rights and allow them "an opportunity of expressing their choice for any and all candidates for office at a different time and in due form of law"). Accordingly, when voters have the opportunity to participate in an election and are not prevented from voting, then NRS 293.465 is not implicated.

Thus, reading NRS 293.465 in harmony with the election-contest statutes, we conclude that the Legislature did not intend for NRS 293.465 to apply when an election actually occurs in each precinct. Instead, NRS 293.465 requires some event that, similar to the loss or destruction of

ballots, prevents eligible voters from casting their votes. Once an election takes place and the voters have had the opportunity to vote, any challenge to the conduct of the election must proceed by way of an election contest brought pursuant to NRS 293.407-.435.

## CONCLUSION

Because voters had the opportunity to vote in the November 3, 2020, general election and were not prevented from casting their votes for District C, we conclude that the district court properly found that the election was not "prevented" under NRS 293.465. Accordingly, we affirm the judgment of the district court.[5]

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Herndon

_____, J.
Stiglich

_____, J.
Pickering

---

[5]We note that Anthony also challenges the district court's finding that the Registrar's affidavit was not an affidavit submitted for the purposes of NRS 293.465. Because we conclude the election was not "prevented" under NRS 293.465, we need not address whether the affidavit would satisfy the requirements of the statute.

SUPREME COURT
OF
NEVADA

(O) 1947A