IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NEVADA, A DOMESTIC NONPROFIT CORPORATION; AND STEVEN BACUS, AN INDIVIDUAL, Petitioners, vs. THE COUNTY OF NYE, A GOVERNMENTAL ENTITY; AND MARK KAMPF, IN HIS OFFICIAL CAPACITY AS INTERIM COUNTY CLERK, Respondents. | No. 85507 <br><br> **FILED** <br><br> OCT 2 1 2022 <br><br> ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ DEPUTY CLERK |

## *ORDER GRANTING IN PART PETITION FOR WRIT OF MANDAMUS*

This emergency, original petition for a writ of mandamus challenges certain Nye County voting procedures to be implemented during the November 2022 election. In particular, petitioners ACLU of Nevada and Steven Bacus challenge as violative of state and federal laws three procedures announced to the Nye County Board of County Commissioners by the County Clerk on September 20, 2022: orally announcing selections on the ballots during the hand-count process, a "special needs" limitation on the use of the touchscreen voting machine, and requiring proof of identification when signatures cannot be verified. Respondents Nye County and County Clerk Mark Kampf timely filed an answer opposing the requested writ, and petitioners timely filed a reply.

*History*

On September 6, 2022, Nye County announced that it will use only paper ballots, with touchscreen accommodations for ADA compliance, and hand counting with parallel electronic tabulation in the upcoming

 

ZZ-33248

general election.[1]  On September 20, the County Clerk presented more details concerning the intended election procedures to the Nye County Board of County Commissioners.[2]  Based on this presentation, which included a slide show as well as verbal explanation, the County Clerk intends to use a volunteer "reader" to verbally announce the selections on each ballot to three "talliers," which reading a "verifier" will confirm.  In

---

[1]On August 26, 2022, the Nevada Secretary of State adopted a temporary regulation amending NAC Chapter 293 and governing the use of hand-count methods for tabulating ballots.  Section 3 of the regulation requires county clerks who plan to conduct hand counts to submit a plan therefor to the Secretary of State 30 days before the election.  As Section 7 defines "hand count" as "the process of determining the election results where the primary method of counting the votes cast for each candidate or ballot question does not involve the use of a mechanical voting system," and as Nye County apparently has not submitted any hand-count plan to the Secretary of State, it follows that Nye County's hand-count process must be a secondary method of counting the votes in the upcoming general election, as stated by the County Clerk at the September 20 hearing.

[2]We take judicial notice of the County Clerk's September 20, 2022, presentation, as recorded and made available on the Nye County public website at: htttps://nyecounty.granicus.com/MediaPlayer.php?view_id=4&clip_id=1722. *See Mack v. Estate of Mack*, 125 Nev. 80, 91, 206 P.3d 98, 106 (2009) (explaining that we may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (quoting NRS 47.130(2)(b))); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information publicly available on government websites when neither party disputes the information's accuracy); *75-80 Properties, LLC v. Rale, Inc.*, 215 A.3d 448, 456 n.3 (Md. Ct. Spec. App. 2019) (taking judicial notice of comments made at a board of county commissioners hearing when the hearing was recorded and made available on the county's website).

accordance with election laws, this process will be open to the public, and individuals may observe the process in person. Additionally, the County Clerk stated that the hand count will begin on October 25, 2022, and he will livestream it, so that individuals will have the opportunity to "become poll watchers at home." Further, as described on a slide, the County Clerk will provide an ADA-compliant touchscreen voting machine, the use of which will be "limited to those with special needs." Finally, the County Clerk indicated that he will strengthen controls through "stringent signature verification" and "require identification if signature or verification fail." Petitioners challenge each of these three processes as violating constitutional, statutory, and federal protections. Respondents counter that the presentation and slides provided only a general overview of the intended process, which petitioners use to speculate and distort in order to find non-existent election law violations.

*Discussion*

A writ of mandamus may issue to compel an official to perform a legally required act. NRS 34.160; *see also Sw. Gas Corp. v. Pub. Serv. Comm'n of Nev.*, 92 Nev. 48, 54, 546 P.2d 219, 222 (1976) ("Performance of a duty, enjoined upon an officer by law, without leaving him any discretion in its performance, may be compelled by mandamus, if there be no other adequate remedy." (quoting *Teeter v. Eighth Judicial Dist. Court*, 64 Nev. 256, 263, 180 P.2d 590, 594 (1947))). The writ may issue "in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law," NRS 34.170, and it is an extraordinary remedy that is solely within this court's discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 679, 818 P.2d 849, 851, 853 (1991).

Voters have a compelling interest in the way elections are run, *see generally State of N.M. ex rel. League of Woman Voters v. Herrera*, 203 P.3d 94, 97 (N.M. 2009) ("Determining the validity of individual votes is of unquestionable importance. Establishing clear rules, prior to election day, as to how such validity is to be established is of equal, if not greater, importance."), as well as a constitutional right "[t]o have complaints about elections and election contests resolved fairly, accurately and efficiently as provided by law," Nev. Const. art. 2, § 1A(11).[3] Further, the votes in Nye County will count toward statewide election contests and ballot matters, and petitioners assert concerns that threaten the validity of that election process, thus impacting the citizens of this state in general. Moreover, given Nye County's plans to start counting mail ballot votes imminently and the district court's refusal to decide the merits of the matter upon the record presented, we conclude that any alternate remedies would not be adequate. *See We the People Nev. v. Miller*, 124 Nev. 874, 880, 192 P.3d 1166, 1170 (2008) (allowing for public policy, urgency, and necessity factors in deciding to consider a writ petition that "raises issues of significant magnitude" and "potentially has an impact on this year's election as well as future general elections"); *LaPorta v. Broadbent*, 91 Nev. 27, 29, 530 P.2d 1404, 1405-06 (1975) (exercising discretion to consider a writ petition concerning an election matter in the first instance "because the public interest requires an early determination of the issue"). Thus, in the interest of the public, we exercise our discretion to consider this petition.

---

[3]For these reasons, and because *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 961, 194 P.3d 96, 102 (2008), is distinguishable, we disagree with respondents' argument that only the Nevada Secretary of State may enforce election laws such that petitioners lack standing to seek relief in this instance.

*The hand-count process*

Petitioners argue that the County Clerk's plan to hand count the mail and early voting ballots, before the polls close, by having a reader state aloud the selections on each ballot, violates statutes restricting the release of election results prior to the close of voting because all counting processes must be open to the public. The tabulating of mail ballots can begin 15 days before the election, NRS 293.269931(1), and counting early voting ballots can be commenced after 8 a.m. on election day, NRS 293.3606(1). The counting of the ballots must be done in public. NRS 293.269931(1) ("The counting procedure must be public."); NRS 293.3606(1) (specifying that counting must be done "in public"). Despite allowing counting to begin before all votes are cast, the statutory schemes governing both types of ballots expressly prohibit the release or public dissemination of results before the polls have closed. NRS 293.269935(3);[4] NRS 293.3606(5).[5] The county clerk is responsible for establishing procedures for counting mail ballots that do not conflict with the prohibition against prematurely releasing results in NRS 293.269935. NRS 293.269925(1) & (2).

---

[4]NRS 293.269935(3) reads as follows: "No voting results of mail ballots may be released until all polling places are closed and all votes have been cast on the day of the election. Any person who disseminates to the public in any way information pertaining to the count of mail ballots before all polling places are closed and all votes have been cast on the day of the election is guilty of a misdemeanor."

[5]NRS 293.3606(2) and (5) provide, respectively, as follows: "The returns for early voting must not be reported until after the polls have closed on election day." "Any person who disseminates to the public information relating to the count of returns for early voting before the polls close is guilty of a gross misdemeanor."



The livestream process County Clerk Kampf outlined on September 20 violates these restrictions because it would broadcast the results as the reader reads them aloud to the talliers and verifiers during the hand-count tabulation scheduled to begin on October 25. In their answer, respondents assert that there will be no premature release of results because they plan to release the recordings or footage of the count only after the polls close. However, they do not directly address their previously expressed intention to livestream the vote count process, and we thus conclude writ relief is appropriate because the hand-count process at issue here, if livestreamed, violates NRS 293.269935(3) and NRS 293.3606(5) to the extent that the counting will occur before the polls close and all votes have been cast.

An issue remains as to how respondents plan to prevent the release of election results to in-person observers during the hand count that is to start on October 25 before the polls close, assuming the read-aloud requirement stands. As to this issue, respondents indicate that observers will be required to certify that they will not prematurely release "information relating to the count of returns" to others. Respondents append to their answer emails exchanged between Clerk Kampf and the Secretary of State's office on the public dissemination issue. This exchange is incomplete, and we note our concern that, if the read-aloud requirement remains and observers are positioned to hear it, the observers, themselves members of the public, NRS 293B.353, are likely to learn election result information before the release of such information is statutorily authorized, even if they certify that they will not disclose this information to others. The record is insufficiently developed on this point, but we note that if such observers hear results, this would violate the applicable statutes. We

SUPREME COURT
OF
NEVADA

(O) 1947A

therefore issue a writ of mandate against the livestream of the vote count process with the readers reading the votes out loud prior to the close of the polls on November 8, 2022, and further mandate that respondents require all observers to certify that they will not prematurely release any information regarding the vote count process before then and ensure public observers do not prematurely learn any election results.

*Use of the ADA touchscreen machine*

Federal law requires that voting systems "be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters." 52 U.S.C. § 21081(a)(3)(A) (2020). Additionally, the Nevada Constitution, Article 2, Section 1A(9) entitles each voter "[t]o equal access to the elections system without discrimination, including, without limitation, discrimination on the basis of race, age, disability, military service, employment or overseas residence." *See also* NRS 293.2546(9) (same). Petitioners note that the County Clerk's presentation stated that use of the ADA machines would be limited to those with special needs, and they assert that, to carry out the stated limitation, poll workers will necessarily have to determine whether voters have such needs, such as by requesting proof or asking about the voter's disability, which violates voters' privacy. Petitioners assert that "separating" such voters and requiring them to prove special needs does not create equal access.

If use of the touchscreens is limited as suggested by the slideshow presentation and petitioners, that process would violate privacy rights and result in discrimination, which is expressly prohibited under the federal and state law cited above. But respondents point out that the

County Clerk further clarified his slide orally by explaining that "[w]e will not deny anybody who feels they need that special assistance," thus allowing voters, not poll workers, to unilaterally determine whether they need to use the ADA touch screen. Further, the Clerk stated in his declaration that "any voter who feels they need to use an ADA touch screen will be allowed to do so," without further inquiry. We treat this statement to mean that any voter who wants to use a touchscreen can. Since respondents have acknowledged that they will provide access to the touchscreen machine to all voters who seek to use it, regardless of any explanation of need, writ relief is not warranted as to this procedure.

*Signature verification*

The County Clerk's presentation slides contain three bullet points on "strengthening controls":

- Stringent signature verification
- No prompting of voter verification information
- Require identification if signature or verification fail

During the presentation, the County Clerk explained that "if the signature or address verification fails, we have the right to ask for voter identification." Petitioners contend requiring proof of identification conflicts with statutory law governing signature verification.

NRS 293.285 (voting at polls) and NRS 293.269927 (mail ballots) govern signature verification.[6] If there is a question as to whether the signature used on the ballot matches the voter's signature, the voter may prove their identity in one of three ways: (a) by answering questions

---

[6]Petitioners cite NRS 293.8874, which expired December 31, 2021, but substantially the same provisions are found in the statutes cited above.

 

about the personal data reported on the voter registration application; (b) by providing other personal data verifying identity, either orally or in writing; or (c) by providing proof of identification, as described in NRS 293.277, other than the voter registration card. NRS 293.285(2); NRS 293.269927(8).

Respondents point out that, in addition to identification, the County Clerk addressed another statutory option (providing identifying information), and accordingly, the Clerk was not suggesting that an identification card will necessarily be required. But the Clerk's statement, rendered in the process of describing ways in which control over the election process will be strengthened, was that identification would be required if signature or address verification fails and did not mention the other statutory ways that identity may be shown. Any limitation on the ability to prove identity by restricting the available options to confirming an address or providing an identification card clearly violates the law giving voters three ways to prove identity, if needed to confirm their signature on the ballot.

In light of the County Clerk's presentation setting forth the procedures to be followed at the upcoming general election in Nye County, and based on the above discussion, we conclude that a writ of mandamus must issue to compel compliance with election laws as to the first and third procedures discussed. Accordingly, we

ORDER the petition GRANTED IN PART AND DIRECT THE CLERK OF THIS COURT TO ISSUE A WRIT OF MANDAMUS instructing Nye County and County Clerk Mark Kampf to (1) refrain from livestreaming the hand-count read-aloud process prior to the close of the polls on November 8, require all observers to certify that they will not prematurely

release any information regarding the vote count before then, and ensure public observers do not prematurely learn any election results, and (2) make available to voters of all three of the statutorily established methods for proving voter identity when a signature verification fails. For the reasons stated herein, we ORDER the petition DENIED with respect to the touchscreen issue.

_____, C.J.
Parraguirre

_____, J.       _____, J.
Hardesty                                 Stiglich

_____, J.       _____, J.
Cadish                                   Pickering

_____, J.
Herndon

cc:    American Civil Liberties Union of Nevada/Las Vegas
       Marquis Aurbach